IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUAN LUIS LEONOR,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CHIEF JUSTICE HEAVICAN, Nebraska Supreme Court Chief Justice; WRIGHT, Nebraska Supreme Court Justice; MILLER-LERMAN, Nebraska Supreme Court Justice; CASSEL, Nebraska Supreme Court Justice; STACY, Nebraska Supreme Court Justice; KELCH, Nebraska Supreme Court Justice; FUNKE, Nebraska Supreme Court Justice; PAPIK, Nebraska Supreme Court Justice; and DOUGLAS PETERSON, Nebraska Attorney General;<br><br>                    Defendants. | **8:21CV76**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Plaintiff Juan Luis Leonor's Motion to Alter or Amend Judgment, Filing No. 35, brought pursuant to Federal Rule of Civil Procedure 59(e). Plaintiff seeks relief from the Court's February 16, 2024, Memorandum and Order (hereinafter "Post-Judgment Order"), Filing No. 34, denying his Motion to Reopen Judgment and Leave to Amend Dismissed Complaint ("Motion to Reopen and Amend") brought pursuant to Federal Rules of Civil Procedure 60(b)(6) and 15(a). For the reasons that follow, Plaintiff's Motion to Alter or Amend Judgment will be denied.

Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. *Akpovi v. Douglas*, 43 F.4th 832, 837 (8th Cir. 2022). Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry

of judgment. *Id*. A Rule 59(e) motion "must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Giving Plaintiff the benefit of the prison mailbox rule,[1] his motion was filed within 28 days of the Court's Post-Judgment Order. *See* Filing No. 35 at 13 (declaration indicating motion mailed on March 12, 2024).

The Eighth Circuit has explained that "Rule 59(e) motions are motions to alter or amend a *judgment*, not any nonfinal order." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) (emphasis in original); *see also Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 (8th Cir. 2021) (noting that a motion under Rule 59(e) "is reserved for final judgments"). "Further, an order denying a Rule 60(b) motion is a final order for purposes of appeal." *United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005) (citing *Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir.1989)). Additionally, the Seventh Circuit Court of Appeals has recognized that "a party who does not prevail on a Rule 60(b) motion may challenge that judgment with a motion to alter or amend under Rule 59(e)," but such challenge is limited in scope as "[t]he Rule 59(e) motion challenges only the Rule 60(b) judgment, not the validity of the underlying judgment." *Martinez v. City of Chicago*, 499 F.3d 721, 727 (7th Cir. 2007) (internal quotation marks omitted). Accordingly, the Court assumes, without deciding, that Plaintiff may properly challenge the Court's Post-Judgment Order pursuant to Rule 59(e). However, Plaintiff has failed to present any new evidence or manifest errors of law or fact that would entitle him to relief from the Court's Post-Judgment Order under Rule 59(e), and his motion will be denied.

---

[1] "Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail system prior to the expiration of the filing deadline." *United States v. Harrison*, 469 F.3d 1216, 1217 (8th Cir. 2006).

2

Plaintiff first argues that the Court erred in finding that Plaintiff lacked standing based on the Court's conclusion that "since Plaintiff's postconviction appeal had already been decided by the Nebraska Supreme Court, then Plaintiff has now no actual case or controversy within the meaning of Article III." Filing No. 35 at 2–3. However, the Court's conclusion that Plaintiff's proposed Second Amended Complaint failed to state an actual Article III case or controversy was not based on the fact that Plaintiff's postconviction appeal was no longer pending at the time the Court reviewed Plaintiff's Motion to Reopen and Amend. Rather, the Court's finding of no case or controversy was based on the fact that

> the underlying actual controversy presented by Plaintiff's allegations is the validity of Plaintiff's convictions which Plaintiff was challenging through his postconviction appeal. What Plaintiff is trying to do here is carve out a claim from his postconviction proceeding, i.e. whether he is entitled to the benefit of the *Ronald Smith* rule[2] to challenge his conviction, and have that collateral question decided by this Court. As the Court concluded in the order dismissing Plaintiff's Amended Complaint, "there is no actual controversy here—this action is simply a prelude to further litigation in state court."

Filing No. 34 at 7 (quoting Filing No. 12 at 6). Thus, the Court's finding that Plaintiff lacked Article III standing had nothing to do with the conclusion of Plaintiff's state postconviction appeal.[3]

---

[2] As the Court explained in its Post-Judgment Order, the Nebraska Supreme Court's decision in *State v. Ronald Smith*, 806 N.W.2d 383 (Neb. 2011) ("*Ronald Smith*"), held that manslaughter upon a sudden quarrel is an intentional offense. As interpreted by the Nebraska Supreme Court, the rule in *Ronald Smith* applied to cases not yet final on direct review but was not a new constitutional rule, *State v. William Smith*, 822 N.W.2d 401 (Neb. 2012) ("*William Smith*"), and was not a substantive rule of constitutional law and did not apply on collateral review, *State v. Glass*, 905 N.W.2d 265 (Neb. 2018).

[3] Similarly, to the extent Plaintiff alleges the Court erred in applying *Rooker-Feldman* to his case based on the conclusion of the state postconviction appeal, any such alleged error would not change the Court's conclusion that Plaintiff's proposed Second Amended Complaint failed to present an Article III case or controversy as it merely presented a collateral question to the real controversy at issue—the validity of Plaintiff's convictions.

3

In reaching that conclusion, the Court relied on the rule in Calderon v. Ashmus, 523 U.S. 740 (1998), that because the relief Plaintiff seeks "would not resolve the entire case or controversy as to any [party] . . . , but would merely determine a collateral legal issue governing certain aspects of . . . pending or future suits," id. at 747, his declaratory judgment action falls "outside the constitutional definition of a 'case' in Article III," id. at 746. See Filing No. 34 at 7–8. Plaintiff, however, attempts to distinguish Calderon by arguing that, unlike the plaintiff in Calderon, Plaintiff had a proceeding in place (his postconviction appeal) for which he sought a declaratory order that would have finally resolved his dispute. Filing No. 35 at 6–7. Plaintiff's argument falls flat, though, because even if the Court had promptly granted Plaintiff's Motion to Reopen and Amend and granted him the declaratory relief he sought, the conclusion is inescapable that Plaintiff would have promptly taken the Court's purported declaratory judgment back to state court to have the state courts rule on the merits of his *Ronald Smith* claim. Plaintiff even admits in his present motion that he will ask the Nebraska Supreme Court again to review the merits of his *Ronald Smith* claim, see Id. at 10, which, despite Plaintiff's attempts at artful characterization, goes directly to the validity of his underlying conviction.

Finally, Plaintiff's arguments that his claim is not moot despite the conclusion of his state postconviction appeal have no bearing on the Court's finding that the proposed Second Amended Complaint does not present an Article III case or controversy. Plaintiff argues, based on the Supreme Court's decision in Reed v. Goertz, 598 U.S. 230 (2023), that if this Court were to award him the declaratory relief he seeks—i.e., that *Ronald Smith* applies retroactively on collateral review—then

4

> "in terms of . . . 'standing' precedent, the court would have ordered a change in a legal status," and "the practical consequence of that change would amount to a significant increase in the likelihood," that the Defendants would grant review of Plaintiff's *Ronald Smith* [claim] on the merits and that Plaintiff therefore "would obtain relief that directly redress[es] the injury suffered."

Filing No. 35 at 12 (internal citation omitted) (quoting *Reed*, 598 U.S. at 234). Plaintiff's reliance on *Reed* is misplaced. In *Reed*, the plaintiff's injury in fact was denial of access to the requested evidence for DNA testing, which the plaintiff alleged resulted from Texas' unconstitutional DNA testing statute. *Reed*, 598 U.S. at 234. Here, Plaintiff's injury, despite any attempts to reframe it, is the alleged invalidity of his criminal conviction based on the *Ronald Smith* rule. A declaration regarding whether Plaintiff is entitled to the benefit of the *Ronald Smith* rule would not redress Plaintiff's injury. Rather, as the Court explained in its Post-Judgment Order, such a declaration would only serve as a precursor to further postconviction or habeas litigation, which is expressly prohibited by *Calderon*.

In conclusion, upon careful consideration of Plaintiff's arguments, the Court determines Plaintiff has not demonstrated any legitimate reason for altering, amending, or otherwise obtaining any relief from the Court's Post-Judgment Order. He has not shown that the judgment was the result of manifest error of law or fact. Thus, Plaintiff has failed to establish sufficient grounds for setting aside the Court's Post-Judgment Order under Rule 59(e).

IT IS THEREFORE ORDERED that: Plaintiff's Motion to Alter or Amend Judgment, Filing No. 35, is denied.

Dated this 28th day of February, 2025.

BY THE COURT:

*Joseph F. Bataillon* (signature)

Joseph F. Bataillon
Senior United States District Judge